IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 23-2159

Criminal

UNITED STATES OF AMERICA,

Appellee,

v.

HUSSEIN KADHIM ABOOD KHALAF,

Appellant.

Appeal from the United States District Court
For the Eastern District of Missouri
District Court No. 4:22-CR00062-HEA-1

The Honorable Henry Edward Autrey,
United States Judge, Presiding

**APPELLANT'S OPENING BRIEF**

MOHAMMED G. AHMED
Assistant Federal Public Defender
1010 Market, Suite 200
Saint Louis, Missouri 63101
(314) 314-2411
ATTORNEY FOR APPELLANT

i

## SUMMARY AND REQUEST FOR ORAL ARGUMENT

Mr. Hussein Khalaf came to this country from Iraq to obtain his master's degree and pursue a Ph.D. in civil engineering. He appeals a misdemeanor judgment imposing time served and a year of supervised release for blackmail (18 U.S.C. § 873) based on purported demands for money to not post nude photos of someone he dated.

Mr. Khalaf challenges the denial of his motion to withdraw his guilty plea to the charge based on his attorney's erroneous assurance it would not subject him to deportation. His attorney went beyond advice to consult an immigration attorney to declare that counsel's own "conversations" and legal research showed the original cyberstalking charge, and the substituted misdemeanor charge would not "certainly" render him deportable. Counsel gave this assurance knowing his client lacked the finances to pay another attorney to confirm his claim. The District Court denied relying on the fact counsel told Mr. Khalaf to consult an immigration attorney, ignoring his lack of means to do so. The Court also ignored the impact of retained counsel's failure to investigate voluminous and complex discovery for exculpatory evidence.

Mr. Khalan requests oral argument of 10 minutes on his claim.

ii

# TABLE OF CONTENTS

Page

SUMMARY OF CASE .................................................................................ii

TABLE OF AUTHORITIES .....................................................................iv

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES ........................................................................2

STATEMENT OF CASE ............................................................................3

            Motion to Withdraw Guilty Plea................................................11

SUMMARY OF ARGUMENT ................................................................14

ARGUMENT

  1. Counsel's erroneous advice that this misdemeanor
     conviction would not likely compel deportation constituted good
     cause to grant permission to withdraw the guilty plea.................15

     A.  Standard of review................................................................15

     B. Mr. Khalaf presented fair and just grounds to withdraw his
       guilty plea based on Attorney Lozano's claim his research
       indicated the charges did not make him deportable. This false
       assurance was not excused by advising him to consult an
       immigration attorney he knew Mr. Khalaf could not pay for...15

CONCLUSION .........................................................................................25

CERTIFICATES OF SERVICE AND COMPLIANCE...........................26

ADDENDUM

Appellate Case: 23-2159    Page: 3    Date Filed: 07/31/2023   Entry ID: 5301343

# TABLE OF AUTHORITIES

**CASES:**                                                                   Page

**Supreme Court Cases**

*Lehmann v United States ex rel. Carson*, 353 U.S. 685 (1957) ......... 2, 19

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ............................... 2, 20, 21, 22

**Docketed Cases**

*Padilla v. Kentucky*, No. 08-651, Brief for the United States as Amicus Curiae Supporting Affirmance, 2009 WL 2509223 (Aug. 17, 2009)....... 21

**Circuit Court and District Court Cases**

*Ortiz v. Barr,* 962 F.3d 1045 (8th Cir. 2020) ......................................... 18

*United States v. Bonilla*, 637 F.3d 980 (9th Cir. 2011) ...................... 2,16

*United States v. Flynn*, 969 F.3d 873 (8th Cir. 2020). .......................... 15

*United States v. Garcia*, 401 F.3d 1008 (9th Cir. 2005) ......................... 16

*United States v. Green*, 521 F.3d 929, 931 (8th Cir. 2008) ................... 15

*United States v. Wicker*, 80 F.3d 263 (8th Cir. 1996) ........................... 16

*Zlatan v. Holder*, 390 Fed. Appx 569 (7th Cir.2010) .............................. 18

**State Court Decisions**

*People v. Kucharski*, 987 N.E.2d 906 (Ill. App. Ct. 2013) ...................... 18

Appellate Case: 23-2159    Page: 4    Date Filed: 07/31/2023 Entry ID: 5301343

**<u>United States Statutes:</u>**

8 U.S.C. § 1227 ...................................................................... 17, 19

18 U.S.C. § 873 ............................................................. 1, 6, 8, 18, 19

18 U.S.C. § 2261(b)(5)............................................................. 18

28 U.S.C. § 1291 .................................................................... 1

**<u>State Statutes</u>**

720 ILC 5/12-7.5(a).................................................................. 18

Appellate Case: 23-2159    Page: 5    Date Filed: 07/31/2023 Entry ID: 5301343

# JURISDICTIONAL STATEMENT

Mr. Khalaf appeals his conviction from a misdemeanor conviction for blackmail in violation of 18 U.S.C. § 873 for which the District Court imposed a sentence of time served plus one year of supervised release. Judgment, R. Doc. 134, pp. 1-2. On appeal he challenges the denial of his motion to withdraw his plea of guilty based on ineffective counsel consisting of mistaken advice that he would not face deportation as a consequence of his plea and conviction. Suppl. Motion to Withdraw Guilty Plea, R. Doc. 111. The District Court imposed judgment after denying the motion to withdraw the plea on April 24, 2023. Judgment, R. Doc. 120. Mr. Khalaf timely filed his Notice of Appeal on May 8, 2023. R. Doc. 128.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

1

## STATEMENT OF ISSUES

I.     Whether the District Court abused its discretion dismissing
       Mr. Khalaf's request to withdraw his plea of guilty despite his
       retained attorney's false assurance a misdemeanor blackmail
       conviction would not certainly subject him to deportation,
       knowing that his client had no resources to obtain confirmation
       from an immigration attorney.

       *Padilla v. Kentucky*, 559 U.S. 356 (2010)

       *United States v. Bonilla*, 637 F.3d 980 (9th Cir. 2011)

       *Lehmann v United States ex rel. Carson*, 353 U.S. 685 (1957)

Appellate Case: 23-2159    Page: 7    Date Filed: 07/31/2023 Entry ID: 5301343

## STATEMENT OF THE CASE

Hussein Khalaf came to the United States from Iraq on a student visa and secured a master's degree in civil engineering at Western Michigan University in 2016. Presentence Investigation Report ("PSR"), R. Doc. 112, ¶¶66, 67. He then began Ph.D. work at St. Louis University. *Id.* at ¶68. As a teaching assistant there, he met another student, E.M., and they dated briefly in December of 2020. *Id.* at ¶14 .

E.M. also started an online relationship with Mohammad Ali Ahmad Almazroui, who used the Instagram name "Moe_19941". *Id.* at¶15. E.M. sent three sexual videos to Mr. Almazroui, who later became angry upon learning of her relationship with Mr. Khalaf with whom he was acquainted. *Id.* Mr. Almazroui sent E.M. messages threatening to forward her sexual videos to St. Louis University if she did not have sex with him. *Id.* From February 6-8, 2022, E.M. received texts from differing phone numbers demanding money and threatening to disperse her nude video images to friends and family. *Id.* at ¶¶17-24. The texts originated from phone numbers using IP addresses that Charter Communications attributed to Mr. Khalaf as a subscriber with a Saint Louis address. *Id.*

3

The FBI conducted surveillance and observed Mr. Hussein and his vehicle at the address several times. *Id.* at ¶25. A search warrant executed August 25, 2021, yielded computers and thumb drives that contained some of the communications E.M. received. *Id.* Mr. Khalaf reached out to E.M. a few days later in a non-threatening encounter. Jan. 5, 2022-Detention Hearing Tr. 11. In an interview with FBI agents on September 21, 2021, Mr. Khalaf admitted participating in messages prompted by Mr. Almazroui from different numbers but denied sending any messages about threats to harm or kill anyone or demanding money. *Id.* at ¶26. Mr. Hussein traveled to Iraq to see his family after this interview and returned to the United States to resume his studies on January 24, 2022. Jan. 5, 2022-Detention Hearing Tr. 10. He was arrested January 25, 2022, and an order was entered appointing him a Federal Public Defender. Order, R. Doc. 13.

On February 9, 2022, a grand jury returned an indictment charging Mr. Khalaf with cyberstalking using instruments of interstate commerce in a course of conduct reasonably expected to cause substantial emotional distress, punishable by five years in prison under 18 U.S.C. §2261(b)(5). Indictment, R. Doc. 22. On April 28, 2022,

4

Charles Lozano entered his appearance as Mr. Khalaf's attorney. Entry, R. Doc. 44. At that time the Government had not yet disclosed extensive forensic evidence relating to the social media posts on which the charge was based. Addendum 20, 22.

Mr. Lozano waived the filing of pretrial motions on June 1, 2022, without notifying Mr. Khalaf. R. Doc. 49; Suppl. Motion to Withdraw Plea, R. Doc. 111 at 2; Addendum at 10. Trial was set for July 5, 2022, R. Doc. 51, but was continued several times at defense counsel's request. R. Doc. 53, 56, 61, 63. Mr. Khalaf wrote the Court on October 3, 2022, asking for a new attorney. Letter, R. Doc. 66, and Attorney Lozano moved to withdraw. Motion, R. Doc. 66. At a hearing on the matter October 13, 2022, Mr. Khalaf noted that he had been incarcerated since January in the Marion County Jail during which time Saint Louis University dismissed him after he failed to receive notices about a hearing on continuing his Ph.D. Oct. 13, 2022 Hearing Tr. 4. Mr. Khalaf believed Mr. Lozano was seeking dismissal of the felony charge for which he signed a waiver of his right to speedy trial. *Id.* After Mr. Khalaf wrote the Court, Mr. Lozano came to the jail to convey another offer, which he turned down because he had "lost

Appellate Case: 23-2159    Page: 10    Date Filed: 07/31/2023 Entry ID: 5301343

everything" when Saint Louis University dismissed him from the Ph.D. program. *Id.* at 5. 6. Mr. Lozano left, remarking, "f__k you and enjoy staying in the prison." *Id.* Mr. Khalaf ultimately told the District Court that if Mr. Lozano's remaining would help solve the case, he would agree to it, and counsel remained on the case. *Id.*

On October 26, 2022, the District Court held a hearing on the Government's request to set a new trial date because the original prosecutor had taken a job out of state. Oct. 26, 2022 Transcript ("Oct 26 Tr.") at 2-3. A new prosecutor entered her appearance ten days earlier and indicated that she had not been led to believe Mr. Khalaf wanted a trial. *Id.* at 5. The District Court granted the Government's request to continue the trial setting acknowledging the prosecutor's need to familiarize herself with the complex social media evidence the charges involved. *Id.* at 6. The Government made a record that it had offered to file a superseding misdemeanor information for blackmail,18 U.S.C. § 873, punishable by no more than a one-year prison term. *Id.* at 7. This offer included a recommended sentence of "time served". *Id.*

When the Court asked if Mr. Khalaf had discussed the offer with counsel, he replied:

6

"Yes, Your Honor, I discussed that with my attorney, Mr. Lozano. I explained like the reason for my rejection because I believe I'm innocent like when it comes to those like two charges, and again, the felony or misdemeanor or everything, I'm here on a student visa and anything of those will affect my stay like legally here in the United Sates. I know I was expelled from school because they held like three or four hearings. They were calling my number and I was in jail, and they decided to expel me. So my last chance to prove my innocence and hopefully go to school – I will not be joining St. Louis University anymore. I asked them to don't expel me so I can move to study in another school. Those are my reasons."

"And again, it's like I am not expert. This is my first time in jail, first time being in trouble, anything, but I've seen like people like when they come to American jail, they have like very bad record sometimes, like violating all like probation, parole, whatever, and let's say protection orders sometimes. They come and they offer a misdemeanor, they leave after one week. I'm here like for nine months. Like October 24th I was here for nine months. So those are like my reasons to reject it because I need another chance to continue my dream to finish my school."

*Id.* at 8. As the hearing ended, Mr. Khalaf told the District Court he had "one more question if possible." *Id.* at 10. Attorney Lozano spoke off the record to Mr. Khalaf, and then counsel addressed the Court:

MR. LOZANO: Your Honor, it's actually something I was going to ask to put on the record with regards to his immigration stays, if I may, Your Honor?"

THE COURT: Yes.

MR. LOZANO: Your Honor, I'm not an immigration attorney, and as such, I have discussed with Mr. Khalaf that he should consult with an immigration attorney with regards to the impact of any

Appellate Case: 23-2159    Page: 12    Date Filed: 07/31/2023 Entry ID: 5301343

conviction. I will say that my non-immigration attorney understanding from discussions and my own research is that neither the felony certainly nor a misdemeanor to the charges as presently charged would be a crime of moral turpitude that would result in his deportation; however, none of that is from the standpoint of an expertise. It's simply my research. So I want to make sure he understands that he should consult.

THE COURT: All right. Have you got that, Mr. Khalaf?

THE DEFENDANT: Yes.

Oct. 26 Tr. 10-11.

The District Court reset trial for January 17, 2023, but on November 23, the Court ordered a change of plea hearing for December 1, 2022. R. Docs. 75-77. On that day, the Government filed a charge of misdemeanor blackmail, alleging that Mr. Khalaf knowingly demanded or received a thing of value while under a threat of informing or as consideration for not informing, in violation of 18 U.S.C. §873. R. Doc. 78. Mr. Khalaf stated he would change his plea to guilty according to the parties' plea agreement, Change of Plea Tr. 6. He initially indicated he had not had enough time to talk with Attorney Lozano about the case, but then stated he was "good to proceed" after conferring off-the-record with Mr. Lozano. *Id.* at 7. He said he was satisfied with counsel's advice and help, but he was also confused about something.

8

*Id.* at 8. After another off the record conference, Mr. Khalaf again said he was "good to proceed." *Id.* He said he had no witnesses Mr. Lozano failed to contact nor any investigation or information that counsel did not provide. *Id.* Mr. Khalaf expressed satisfaction with Mr. Lozano's representation and acknowledged the rights to trial and protection against self-incrimination he would waive. *Id.* at 8-12. When the Court asked if Mr. Khalaf was satisfied, he understood everything in the superseding misdemeanor charge, he replied yes, although when asked if he had any questions about the superseding indictment he again spoke with Counsel off the record and replied that he did not. *Id.* at 13. Mr. Khalaf denied receiving threats or promises in exchange for his guilty plea. *Id.* at 14. He confirmed his signature on the plea agreement and said he had no questions. *Id.* at 15.

The prosecutor confirmed the parties' joint recommendation of "time served" and that the Government would dismiss the underlying felony indictment upon the Court's acceptance of the plea. *Id.* at 16. He also indicated "[t]he parties have agreed to certain facts that are laid out on pages 2 through 6 of the agreement," although he did not recite

Appellate Case: 23-2159    Page: 14    Date Filed: 07/31/2023 Entry ID: 5301343

those facts until after the Court accepted the plea agreement. *Id.* at 16-17, 19-20.

The prosecutor continued, that "the parties understand – we have made certain understandings or agreements as to the possibility of detention. The defendant's immigration status may be affected by the Guilty Plea Agreement." *Id.* at 18. The Government did not specify those understandings further, nor did the Court inquire about them. *Id.* Instead, the Court asked Mr. Khalaf if anything the prosecutor had stated "just now" confused him and Mr. Khalaf said no. *Id.*

The Court accepted the plea agreement, and then asked the Government to recite the evidence available to establish a factual basis had the charge gone to trial. *Id.* at 19-21. At the end of the recitation, Mr. Khalaf responded that the recitation was "[s]ubstantial true." *Id.* at 22. He admitted knowingly demanding or receiving something of value "under a threat of informing or as consideration for not informing against a violation of a law of the United States." *Id.* The Court accepted the guilty plea and set sentencing for March 2, 2023. *Id.* at 23. The Court granted Mr. Khalaf's unopposed request for release on bond to pursue reinstatement at Saint Louis University. *Id.* at 23-25.

10

## Motion to Withdraw Guilty Plea

Four days after he entered his guilty plea, Mr. Khalaf wrote a letter asking to withdraw it and to dismiss Attorney Lozano.  Letter, R. Doc. 86.  The District Court granted Attorney Lozano's motion to withdraw and reappointed the Public Defender.  R, Docs. 87, 88, 91, 94. His Public Defender supplemented the motion to withdraw the guilty plea, detailing Mr. Lozano's failure to obtain discovery before waiving pretrial motions without advising Mr. Khalaf.  Suppl. Motion to Withdraw Plea, R. Doc. 111 at 2, Addendum-10.  He noted that Mr. Khalaf's statements at the October 26, 2022, hearing made clear his paramount goal was to resume the graduate education for which he came to the United States.  Addendum 13.  He cited Mr. Lozano's claim that "discussions and [his] own research" indicated that "neither the felony certainly nor a misdemeanor . . . as presently charged would be a crime of moral turpitude that would result in his deportation[.]"  *Id.* The pleadings averred that Mr. Lozano went beyond merely indicating that a conviction might have adverse deportation consequences to cite his own determination the misdemeanor would not render him deportable.  Addendum at 15-16.  Attorney Lozano knew Mr. Khalaf

11

lacked funds to pay an immigration specialist. *Id.* The pleading cited

cases indicating that both cyberstalking and blackmail would qualify as

crimes of moral turpitude rendering one deportable. *Id.* at 16.

The District Court denied the motion to withdraw the plea just

before it pronounced judgment on April 25, 2023:

> "You know, at the time of the entry of the plea of guilty and
> at times of other matters appearing before me in this case, the
> defendant clearly understood . . . what was transpiring at the time
> that he entered his plea of guilty. He took an oath, and under the
> circumstances, I took some additional time to ensure that he
> understood what was going on in relation to the plea of guilt and
> that he was pleading guilty to a misdemeanor with a
> recommendation I believe of time served…
>
> . . . . . . . . . . . .
>
> As opposed to the felony charges that were on the table
> previously. It's clear from the record that the defendant while
> under oath indicated that he understood those things, that it was
> his desire to enter a plea of guilty, no one was forcing him to enter
> a plea of guilty, that he fully understood the consequences of the
> plea of guilty on that December the 1st day, that he understood
> those issues relation to immigration or lack thereof, the possibility
> of or not the possibility of, that he was doing this freely,
> voluntarily. He indicated that he had no complaints with his
> attorney, that his attorney had appropriately advised him all
> matters relating to the entry of the plea of guilty, fully answered
> all of his questions that he had of his attorney relating to those
> matters that relate to the entry of the plea of guilty versus a trial
> and the charge, the misdemeanor charge. The record is replete
> with instances and matters under oath that entirely are contrary
> to the defendant's statement and assertion not under oath in his

motion, pro se motion, now supplemented by your office as his counsel.

Ordinarily, the statement would be made that clearly this is just an example of buyer's remorse, but it's not – you can't really say that's an example or experience of buyer's remorse because going from a felony, if you just look at that, going from a felony to a misdemeanor with time served with some uncertainty as to deportation, how remorseful can one be, and especially considering that he was advised by his attorney and indicated that he was satisfied with that advice when inquired as to whether he was satisfied with all of the advice that his attorney had provided to him that he should consult with an immigration attorney on the issue of deportation. Whether he did that or not, I don't know. There is nothing in his statement or his motion or in the supplement that he did, but he was advised to do that, which is appropriate advice under these types of circumstances where there might be an issue of deportation.

Sentencing. Tr. 7-8.

The Court imposed a term of "time served," to be followed by one year of supervised release. *Id.* at 18. The Court forbade communications or interactions with E.M. without prior permission from his probation officer and ordered him to pay the costs of any future counseling she might pursue. *Id.* at 19. The Court further indicated Mr. Khalaf to report immediately to the U.S. Immigration and Customs Enforcement and follow all instructions and reporting requirements. *Id.* Notice of Appeal was timely filed May 8, 2023. Notice of Appeal, R. Doc. 130.

# SUMMARY OF ARGUMENT

Mr. Khalaf established "good cause" to withdraw his guilty plea in Attorney Lozano's improper assurance that neither the original cyberstalking "felony certainly nor a misdemeanor" blackmail charge comprised a crime involving moral turpitude making him deportable. Mr. Lozano went beyond advising Mr. Khalaf to consult an immigration attorney to convey a false assurance citing his own research and "discussions" indicating a guilty plea to the misdemeanor would not render him deportable. Counsel offered his unfounded advice knowing Mr. Khalaf lacked the funds to obtain an immigration expert's view.

The District Court's reliance on Mr. Khalaf's understanding that he pled guilty to a misdemeanor rather than a felony in no way refuted the plain record of Attorney Lozano's false assurance that neither felonious cyberstalking nor misdemeanor blackmail clearly put him at risk of deportation. The District Court did not address Attorney Lozano's failure to investigate the complex social media discovery for evidence supporting Mr. Khalaf's claim that Almazroui was responsible for the threatening posts that led to the original charge. Counsel's failure to investigate the evidence also coopted Mr. Khalaf's choice.

14

I. **The District Court abused its discretion denying Mr. Khalaf's motion to withdraw his guilty plea as Mr. Lozano's went beyond advising him to consult an expert to inject a false assurance that his conviction would not make him deportable.**

### A. Standard of Review

This Court reviews for abuse of discretion a district court's denial of a defendant's motion to withdraw a plea of guilty in accordance with the "fair and just reason" standard for withdrawal under Fed. R. Crim. P. 11(d)(2)(B). *United States v. Flynn*, 969 F.3d 873, 878 (8th Cir. 2020). The Court reviews *de novo* the mixed question of law and fact of whether a plea was knowing and voluntary. *United States v. Green*, 521 F.3d 929, 931 (8th Cir. 2008).

### B. Mr. Khalaf presented fair and just grounds to withdraw his guilty plea based on Attorney Lozano's claim his research indicated the charges did not make him deportable. This false assurance was not excused by advising him to consult an immigration attorney he knew Mr. Khalaf could not pay for.

A defendant may withdraw a guilty plea after it has been accepted and prior to sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "The 'fair and just' standard is a liberal standard, [although] it does not create an automatic right to withdraw a plea." *United States v. Wicker*, 80 F.3d

263, 266 (8th Cir. 1996). Upon finding a fair and just reason, a court must then consider "whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion." *United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir. 1993).

A defendant's ignorance of immigration consequences can establish good and just cause to satisfy Rule 11(d)(2)(B). *See, e.g., United States v. Bonilla*, 637 F.3d 980, 986 (9th Cir. 2011) (reversing denial of Rule 11(d)(2)(B) motion where defendant would not have pled guilty had he known deportation would result from illegal possession of a firearm). A motion to withdraw a guilty plea under Rule 11(d)(2)(B) based on legal advice of which the accused was deprived or affirmatively misled by counsel should be granted if correct information "could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty." *Id.*, quoting *United States v. Garcia*, 401 F.3d 1008, 1011-12 (9th Cir. 2005).

Mr. Khalaf made clear to Attorney Lozano and the District Court that his ability to remain in this country to get his Ph.D. comprised the

goal guiding his response to the charge against him. Oct. 26 Tr. 8, 10-11. "The severity of deportation— 'the equivalent of banishment or exile,'—only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Padilla v. Kentucky,* 559 U.S. 356, 373-74 (2010). When the deportation consequences of a particular plea are unclear or uncertain, the duty of a private practitioner "is more limited." *Id.* at 369. "But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." *Id.*

Congress authorized the Attorney General to order removal of non-citizens within certain classes identified in 8 U.S.C. § 1227. It provides in part that

> "[a]ny alien who. . . is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and . . . is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable."

Section 1227(a)(2)(A)(i)(I)-(II). Absent a statutory definition of "moral turpitude," this Court looks to the definition of the term by the Bureau of Immigration Affairs:

> Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in

17

general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude

*Ortiz v. Barr,* 962 F.3d 1045, 1048 (8th Cir. 2020).

Both the original cyberstalking charge and the misdemeanor information charging blackmail under 18 U.S.C. § 873 might fit the "moral turpitude" definition. Cyberstalking under 18 U.S.C. § 2261A(2)(B) includes conduct intended to harass or intimidate another using electronic communications that cause or would be reasonably expected to cause substantial emotional distress to the targeted victim. The Seventh Circuit upheld a ruling that an Illinois law prohibiting harassment via electronic communications in 720 ILC 5/12-7.5(a) was a crime of moral turpitude in *Zlatan v. Holder*, 390 Fed. Appx 569, 571 (7th Cir.2010). The Illinois law prohibited electronic communication directed at a specific subject that would cause reasonable persons to fear for their safety or suffer emotional distress *See also People v. Kucharski*, 987 N.E.2d 906, 915-916 (Ill. App. Ct. 2013) (evidence proved electronic harassment by showing defendant accessed a My Space page he helped the victim setup to post lewd comments soliciting oral sex and told victim she deserved it).

18

The misdemeanor blackmail offense to which Mr. Khalaf pled guilty proscribed a form of extortion defined as a demand for money or some other valuable thing under a threat of informing, or as a consideration for not informing another about something. 18 U.S.C. § 873. The Supreme Court has treated blackmail as equivalent to crimes involving moral turpitude in the immigration context. *See Lehmann v United States ex rel. Carson*, 353 U.S. 685, 689-90 (1957). That blackmail constitutes a misdemeanor poses no bar to finding it embodies moral turpitude because they include crimes punishable by one year in prison under Section 1227(a)(2)(a)(i)(II).

The District Court's ruling that Mr. Lozano's admonition to consult an immigration attorney was "appropriate advice" sidesteps the critical fact that Mr. Lozano did not stop at that. Sentencing Tr. 7-8. Mr. Lozano added that his own "conversations" and legal research indicated that neither the cyberstalking charge nor blackmail certainly qualified as a crime involving moral turpitude. Oct. 26 Tr. 10-11. Mr. Lozano's remarks about consulting immigration counsel served his own interests more than Mr. Khalaf's. Oct. 26 Tr. 10. Counsel knew full well Mr. Khalaf's family could not fulfill their existing financial

Appellate Case: 23-2159     Page: 24     Date Filed: 07/31/2023 Entry ID: 5301343

obligations to him let alone pay for a new immigration attorney and that Mr. Khalaf had no income or resources to do so. Sentencing Tr. 8. Defense counsel's volunteered opinion injected a false assurance that Mr. Khalaf would not face deportation by pleading guilty to the misdemeanor. He referred to having "conversations" with others, without specifying whether the unidentified participants had the immigration expertise he lacked. He injected a false assurance that by going forward to vindicate the misdemeanor plea bargain he negotiated with the Government Mr. Khalaf did not risk deportation. *See Padilla*, 559 U.S. at 368.

In short, Mr. Khalaf's motion established good and just cause to withdraw his plea of guilty. The District Court clearly erred in denying his request on the basis that he knew he pled guilty to a misdemeanor subject to a maximum one year in prison instead of the five-year maximum term applicable to the original felony. Sentencing Tr. 7 These circumstances do not refute the false assurance Mr. Lozano generated by citing his legal research and "conversations" with unidentified others. Oct. 26 Tr. 10-11. The District Court's conclusion that Mr. Lozano's advice to consult an immigration attorney was

20

"appropriate" sidesteps the salient circumstance that this attorney knew all too well Mr. Khalaf had no means to pay an immigration attorney or expert. Sentencing. Tr. 8. The Supreme Court in *Padilla* did not license defense counsel to volunteer mistaken advice in addition to a recommendation to consult another attorney—far from it. The Government in *Padilla* agreed that, regardless of whether an attorney is required to give accurate advice on non-criminal issues, "counsel is required to provide accurate advice if she chooses to discuss these matters." *Id.* at 369-70. "This is true not only of advice regarding the criminal proceeding itself, but also of advice on subjects outside its scope, such as collateral legal consequences that the defendant would wish to avoid if possible." *Padilla v. Kentucky*, No. 08-651, Brief for the United States as Amicus Curiae Supporting Affirmance, 2009 WL 2509223 (Aug. 17, 2009).

The District Court record bears no support for a conclusion that Mr. Khalaf would have pled guilty to blackmail had Mr. Lozano not volunteered his uncontradicted view that misdemeanor blackmail would not constitute a crime of moral turpitude compelling deportation. Mr. Lozano's comments addressing the issue proved he knew Mr. Khalaf'

21

deemed "the right to remain in the United States [as] more important . . . than any potential jail sentence.'" *Padilla*, 559 U.S. at 368. Mr. Khalaf's consistent desire to remain in this Country to pursue the education that brought him here easily establishes a reasonable probability he would not have pled guilty but for Mr. Lozano's remarks belittling the risk of deportation posed by a misdemeanor conviction and a sentence of time served. Mr. Lozano's conduct was unreasonable under the circumstance and constituted ineffective assistance qualifying as just cause for Mr. Khalaf to withdraw his plea of guilty.

The other factors this Court must consider upon finding good and just cause for withdrawing the plea of guilty also support a reversal. *See Nichols*, 986 F.2d at 1201 (the appellate court should consider how long after the plea the accused moved for withdrawal, evidence of innocence, and prejudice to the Government). First, Mr. Khalaf promptly wrote the Court to withdraw his plea just four days after he entered it. R. Doc. 86. His promptness strongly corroborates his earnest intent to vindicate himself by a trial and resume the successful academic career in this country that this prosecution abruptly halted.

22

Second, through no fault of his own, Mr. Khalaf did not receive the extensive forensic discovery Mr. Lozano did not pursue or discuss with him after Mr. Khalaf's relatives hired him. *See* Suppl. Motion to Withdraw Plea, R. Doc. 111, at 2; Addendum at 17-18, 20, 22. After the FBI first interviewed him, he reached out to E.M. Detention Hearing Tr. 11. The Government noted that in doing so Mr. Khalaf *did not* attempt to threaten E.M. for reporting the texts she received. *Id.* Mr. Khalaf wrote the Court asserting his innocence. Letter, R. Doc. 55.

Mr. Lozano, however, did not investigate or discuss any discovery with Mr. Khalaf. Suppl. Motion to Withdraw Plea, R. Doc. 111, pp. 9-10; Addendum 17-18. After Mr. Lozano entered the case, the public defender he replaced wrote to alert him that the Government had not yet shared voluminous forensic evidence on which the case was based. *Id.* and Addendum 20, 22. Mr. Khalaf cannot be faulted for failing to cite exculpatory evidence in forensic discovery he never saw. Mr. Khalaf raised Mr. Lozano's failure to investigate the Government's case as additional good and just cause to withdraw his plea. *Id.* The District Court made no reference or findings on this claim.

Appellate Case: 23-2159   Page: 28   Date Filed: 07/31/2023 Entry ID: 5301343

Finally, the Government would not suffer any significant prejudice by granting Mr. Khalaf's request. The original prosecutor herself left the office for employment in Utah and the new prosecutor inherited the case not expecting that the case would go to trial. Oct. 26 Tr. 2-3. Less than a month passed between the October 26, 2023, hearing on its request to continue the trial date and the District Court's order setting the December 1 change of plea hearing. R. Doc. 77.

Appellate Case: 23-2159    Page: 29    Date Filed: 07/31/2023 Entry ID: 5301343

## CONCLUSION

Wherefore, Mr. Khalaf requests that this Court enter an order vacating the judgment sentencing him to "time served" and one year of supervised release and remanding the case with instructions to grant Mr. Khalaf's motion to withdraw his guilty plea.

Respectfully submitted,

/s/ *Mohammed G. Ahmed*
MOHAMMED G. AHMED
Assistant Federal Public Defender
Federal Public Defenders Office
1010 Market, Suite 200
Saint Louis, MO 63101
E-mail: Mohammed_Ahmed@fd.org
(314) 241-1255
Facsimile: (314) 421-3177

ATTORNEY FOR APPELLANT

25

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Ms. Colleen Lang, Assistant United States Attorney.

/s/ *Mohammed G. Ahmed*
Assistant Federal Public Defender

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(b), the undersigned hereby certifies that this Brief complies with the type-volume limitation. The number of words contained in this Brief (minus sections excluded by Fed, R. App. P. 32(b)(iii)) typed in Word 2016 in 14-point font is 5,014.

In accordance with 8th Cir. R. 28A(h)(2), the brief and addendum have been scanned for viruses and are virus free.

/s/ *Mohammed G. Ahmed*
Assistant Federal Public Defender